UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GARY ALLEN DYKE**, **SR.**,  Case Number 1:13 CV 304

    Plaintiff,  Judge Dan Aaron Polster

    v.  REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.  Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Gary Allen Dyke, Sr., filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits (DIB). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated February 11, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on April 7, 2009, alleging a disability onset date of February 19, 2009, due to various back disorders, left knee replacement, bilateral carpal tunnel syndrome, and depression. (Tr. 117, 168). His claim was denied initially (Tr. 61-64) and on reconsideration (Tr. 66-68). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 72). Plaintiff, represented by counsel, a vocational expert (VE), and a medical expert testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 7, 44). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final

decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. On February 11, 2013, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### Vocational and Personal Background

Born March 24, 1966, Plaintiff was 45 years old on the date of the ALJ hearing held September 21, 2011. (Tr. 26, 117). Plaintiff has a high school education and past relevant work experience as a cabinet assembler and cabinet inspector. (Tr. 55, 169). Plaintiff testified he was mainly impaired by a back injury from 1990. (Tr. 31, 35). However, he was able to continue working until 2009, when his boss transferred him from his cabinet inspector job (a quality control job that involved data-entry and paperwork) to an assembly job that required him to bend, lift, and kneel all day. (Tr. 34-35). Plaintiff testified that he would have been able to continue working as a cabinet inspector, but the position was no longer available with his company. (Tr. 34-35). Plaintiff looked for a new job but was unable to find one that fit his skills or physical abilities. (Tr. 35). Plaintiff also sought job placement through vocational rehabilitation but was put on a waiting list pending the outcome of his disability determination. (Tr. 36).

Plaintiff lived with his wife and was able to cook meals, wash dishes, fold clothes, wash laundry, garden, work on cars, and walk his dog for up to 40 minutes at a time when he felt up to it. (Tr. 37-38, 348). Plaintiff was also active on the computer, had a Facebook account, and watched television. (Tr. 530). When asked about his typical day, Plaintiff said he woke up, made breakfast, went for a walk, sat around, did dishes and laundry, and lay down if his back hurt. (Tr. 43-44). Plaintiff could drive, go grocery shopping with his wife, and sometimes visited friends. (Tr. 38-40).

On June 22, 2010, Plaintiff met with the Ashtabula Bureau of Vocational Rehabilitation (BVR) for a work evaluation. (Tr. 207-31). During the evaluation, Plaintiff said he would be willing to drive 20-30 miles to and from work. (Tr. 209). His body language was described as tense in nature due to pain. (Tr. 209). On July 21, 2010, the BVR sent Plaintiff a letter informing him of his vocational options based on his evaluation. (Tr. 207). In sum, the BVR concluded Plaintiff could request direct job placement with Goodwill for shipping/receiving, sales, or customer service positions; take machine trades programming courses at a community college; or attend a nearby University to earn an associate's degree in Electrical Engineering. (Tr. 207).

On March 11, 2011, Christy Ash, an Ohio Rehabilitation counselor, completed an Order of Selection form regarding Plaintiff's eligibility for vocational rehabilitation services. (Tr. 586). Ms. Ash found Plaintiff had a significant disability that limited his ability to communicate and tolerate work. (Tr. 586).

**Knee Replacement**

In April 2007, Plaintiff underwent surgery for a total left knee replacement. (Tr. 369). A year later, Plaintiff reported he was doing well and was pleased with his surgery, but experienced some intermittent swelling and discomfort with weather changes. (Tr. 372). He said his pain level was a four out of ten on average and a six out of ten at its worst. (Tr. 372). Robert M. Molloy, M.D., reported Plaintiff's range of motion was essentially normal and his knee function was 90 out of 100. (Tr. 372).

**Carpal Tunnel**

On July 7, 2008, neurologist Jack Anstandig, M.D., examined Plaintiff for complaints of pain in his shoulders, arms, wrists, and hands. (Tr. 608). Dr. Anstandig performed nerve

conduction studies and an MRI which revealed bilateral carpal tunnel syndrome. (Tr. 609). Dr. Anstandig referred Plaintiff to an orthopedic hand surgeon for further evaluation. (Tr. 267, 610).

Plaintiff underwent carpal tunnel release surgery for his right and left hands on July 15, 2008, and August 12, 2008, respectively. (Tr. 263). Plaintiff was released to regular work duty on September 22, 2008. (Tr. 261).

**Back Pain**

On October 20, 2008, an MRI of Plaintiff's lumbar spine revealed degenerative changes, mild disc space narrowing, and mild disc herniation and bulging without nerve root impingement. (Tr. 568-69). There was no evidence of canal stenosis. (Tr. 569).

On October 31, 2008, Plaintiff sought treatment at Willoughby Hills Family Health Center Pain Management Department for lower back pain associated with a recent job change requiring more physical work. (Tr. 339, 342). Plaintiff said his back pain primarily made it difficult for him to sleep, described the pain as intermittent and moderate, and rated it as a five on a scale of ten. (Tr. 339). On examination, Plaintiff's spinal range of motion was normal and his muscle strength was intact. (Tr. 341). Dr. Sameh R. Yonan, M.D., reviewed the MRI results and diagnosed lumbago, lumbar disc replacement, lumbosacral disc degeneration, and myalgia and myositis, not otherwise specified. (Tr. 341). Dr. Yonan prescribed medication and recommended physical therapy, lumbar epidural steroid injections, and lumbar facet joint blocks. (Tr. 342).

On August 11, 2009, Plaintiff followed up with Dr. Yonan after a series of epidural steroid injections and physical therapy. (Tr. 297-98). Plaintiff had "improving and stable" pain symptoms and his medication was helping. (Tr. 297). He rated his pain as a four out of ten and described it as "aching." (Tr. 297). An examination revealed minimal tenderness over Plaintiff's

lower back and improved range of motion, with no new motor or sensory findings. (Tr. 298). Dr. Yonan continued Plaintiff's treatment regimen and said he could return to work if he took precautions and used a back brace. (Tr. 298-99).

Plaintiff underwent physical therapy from December 28, 2008 through June 23, 2009. (Tr. 401-18). His discharge papers indicated he was compliant with therapy but he did not need direct supervision from a physical therapist. (Tr. 495). The notes also indicated Plaintiff had made improvements such as being able to sit for an hour. (Tr. 495).

Plaintiff returned to Dr. Yonan on September 4, 2009. (Tr. 292-93). He was concerned about his physically demanding job but reported his pain was stable. (Tr. 292-93). X-rays of Plaintiff's lumbar spine taken in October 2009 revealed degenerative disc disease but were otherwise normal. (Tr. 287, 615).

On November 4, 2009, Plaintiff sought treatment for lower, intermittent back pain that radiated to his leg. (Tr. 276). An MRI of Plaintiff's lumbar spine revealed mild spondylosis in the discs and facet joints of the lower lumbar spine, without high-grade canal or foraminal narrowing. (Tr. 277). There was no evidence of significant disc herniation, stenosis, or nerve impingement. (Tr. 277). Based on the MRI, Plaintiff was instructed to exercise but surgery and further injections were not recommended. (Tr. 277).

On December 3, 2009, Plaintiff underwent nerve conduction studies of his right leg, with normal results. (Tr. 497). There was no evidence of lumbosacral motor radiculopathy or generalized sensorimotor polyneuropathy. (Tr. 279, 497).

From December 2009 through June 2011, Plaintiff sought treatment at Orwell Medical Center for back pain. (Tr. 563-67, 588-97). Tammy Gutierrez, M.D., reported Plaintiff had tenderness and spasms of the paraspinal muscles but normal gait, muscle strength, tone, and

5

bulk. (Tr. 564-66, 593). Plaintiff continually reported lower back pain but indicated he exercised, walked his dog, applied heat, massaged, and stretched to make it better. (*See* Tr. 564-66, 588-97). Dr. Gutierrez generally noted Plaintiff's back pain was stable but poorly controlled and prescribed Vicodin and Amitriptyline for back pain, and Cymbalta for pain and mood. (Tr. 564, 566, 588, 594). On September 3, 2010, Dr. Gutierrez found Plaintiff had fair control over his back pain and referred him to a chiropractor. (Tr. 591).

On March 23, 2011, spinal surgeon Gordon R. Bell, M.D., examined Plaintiff at Dr. Gutierrez's request. (Tr. 613). Dr. Bell noted Plaintiff had not had surgery and was treating his back pain using conservative measures. (Tr. 613). Plaintiff's neurological exam was normal and his lumbar x-rays were within normal limits. (Tr. 615). He had a normal gait, reflexes, sensation, muscle tone, bulk, and strength. (Tr. 614-15). Dr. Bell informed Plaintiff he was not a surgical candidate, diagnosed back and leg pain, and recommended physical therapy, weight loss, and treatment for depression. (Tr. 615).

On July 18, 2011, Dr. Gutierrez completed a Medical Assessment of Ability to do Work-Related Activities. (Tr. 618). Dr. Gutierrez opined Plaintiff was limited to lifting ten pounds frequently and five pounds occasionally; standing for approximately two hours and sitting for three to four hours in an eight-hour work day; no climbing, balancing, stooping, crouching, kneeling, or crawling; minimal reaching and handling; and no exposure to vibration or extreme cold. (Tr. 618-20). Specifically, Dr. Gutierrez noted Plaintiff's back pain flared up with vibration and weather, and carpal tunnel flared up with prolonged grip. (Tr. 620).

**Opinion Evidence**

On March 23, 2009, Plaintiff underwent a Functional Capacity Evaluation at the Cleveland Clinic. (Tr. 347). On examination, Plaintiff could sit for 30 minutes, stand for nineteen

minutes, and walk for seven minutes. (Tr. 347). Plaintiff demonstrated stair climbing tolerance within normal limits. (Tr. 347). His fine motor skills were within normal limits but gross manipulation was significantly less than normal. (Tr. 347). However, he was able to use hands normally for prolonged periods to grasp and manipulate objects. (Tr. 347). Physical therapist Maureen Caldwell noted Plaintiff's final pain rating was ten out of ten but he was able to walk out of the waiting area and down the hall while talking normally, without physical signs of pain. (Tr. 352). She also noted he stopped testing due to increasing back pain but rated pain the same with each exercise, which was also the same as when he arrived. (Tr. 352). Finally, Ms. Caldwell noted his reported functional tolerance for sitting was less than his observed tolerances during the examination. (Tr. 352). She concluded Plaintiff could perform light-to-medium physical work and lift up to 22 pounds, 33 percent of the workday. (Tr. 352).

On December 8, 2009, chiropractor Adam Davis completed a questionnaire regarding Plaintiff's impairments. (Tr. 501). He found Plaintiff had a normal gait, but use of his extremities for functional tasks was limited by carpal tunnel and shoulder pain. (Tr. 501).

State agency reviewer W. Jerry McCloud, M.D., reviewed the evidence and found Plaintiff could perform medium exertional work. (Tr. 550-57).

**Mental Impairments**

Plaintiff was treated with medication for "moods" related to his back pain by Dr. Gutierrez. (Tr. 566). Plaintiff had not received mental health treatment or counseling. (Tr. 530).

Plaintiff saw Richard C. Halas, M.D., for a consultive psychological evaluation on January 15, 2010. (Tr. 528-31). Plaintiff was oriented, cooperative, and well-kept, but "rather hesitant and tearful." (Tr. 528). Plaintiff reported he was forced to leave work because of physical problems but admitted he failed a drug screening. (Tr. 530). Dr. Halas observed that

7

Plaintiff had little or no difficulty sitting, and estimated that Plaintiff's ability to stand, walk, lift, carry, and handle objects was slightly below average. (Tr. 530). He found Plaintiff had moderate depressive symptoms that caused a mild impairment in his ability to relate to others. (Tr. 531). Otherwise, Dr. Halas found Plaintiff was not impaired with regard to his abilities to maintain attention, concentration, and directions; withstand stress and pressures associated with day-to-day work; or manage his own funds. (Tr. 531). Dr. Halas diagnosed depressive order, not otherwise specified, and borderline personality disorder. (Tr. 531).

On January 28, 2010, state agency psychologist Cindy Matyi, Ph.D., reviewed the evidence and found Plaintiff had moderately restricted activities of daily living; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 546). Dr. Matyi opined Plaintiff was able to comprehend, remember, and carry out simple to moderately complex tasks and instructions; maintain attention and make simple decisions; interact appropriately with supervisors and co-workers on a superficial basis; and adapt to a setting where duties were routine and predictable and did not involve strict time limitations or production standards. (Tr. 534).

**ALJ Hearing Testimony**

Donald Junglas, M.D., a specialist in internal medicine, reviewed Plaintiff's medical evidence and testified at the ALJ hearing. (Tr. 45). Dr. Junglas found Plaintiff had the severe impairments of lumbago, chronic back pain, and depression. (Tr. 45). However, he said Plaintiff's degenerative disc disease was very common in adults and the records did not reflect neurological dysfunction. (Tr. 46). He also noted Plaintiff's mild spondylosis was merely arthritis. (Tr. 46). Dr. Junglas found Plaintiff did not meet or medically equal a listed impairment. (Tr. 48-49). He opined Plaintiff could perform light exertional work that required no

8

climbing of ladders, ropes, or scaffolds, and only occasional climbing of ramps and stairs. (Tr. 50). Plaintiff could frequently balance; occasionally stoop, kneel, and crouch; and must avoid concentrated exposure to hazardous machinery and unprotected heights. (Tr. 50). With respect to mental restrictions, Dr. Junglas found Plaintiff should be limited to simple, routine work with no high production quotas or strict time requirements. (Tr. 50-51). Plaintiff had no social restrictions and no limitations with his ability to reach, finger, or handle. (Tr. 51). Dr. Junglas said Dr. Gutierrez's July 18, 2011 assessment of Plaintiff's physical functioning was not supported by the record in light of Plaintiff's normal examination findings. (Tr. 52-53).

Subsequently, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational characteristics who was limited to light work that required no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps, stairs, stooping, kneeling, and crawling; and no concentrated exposure to hazardous machinery or unprotected heights. (Tr. 55). The individual was further limited to simple, routine tasks with no high production quotas or strict time requirements, and was precluded from commercial driving. (Tr. 55). The VE identified several jobs this individual could perform at the light exertional level. (Tr. 56). However, if this person was required to take two fifteen minute breaks during the workday, the VE testified he would be unable to perform in a competitive work setting. (Tr. 57).

**ALJ's Decision**

The ALJ found Plaintiff had the severe impairments of lumbago; myalgia and myositis, not otherwise specified; lumbar disc degeneration and disc displacement; mild spondylosis in lumbar spine; foraminal stenosis; status-post left knee replacement; depressive disorder, not otherwise specified; and borderline personality disorder. (Tr. 12). The ALJ found Plaintiff had the residual functional capacity (RFC) to perform work consistent with the limitations presented

in his hypothetical question to the VE. (Tr. 14). The ALJ concluded Plaintiff was unable to do any of his past relevant work but could perform a significant number of jobs in the economy. (Tr. 19-20).

The ALJ gave "less weight" to Dr. Gutierrez's July 18, 2011 opinion because "it was not supported by the objective medical evidence" and "appear[ed] to be based on [Plaintiff's] subjective complaints []." (Tr. 15). The ALJ also found Plaintiff's complaints of pain not credible to the extent they were inconsistent with the RFC. (Tr. 17). In doing so, the ALJ summarized Plaintiff's testimony and disability reports and found "minimal objective evidence" to support greater restrictions. (Tr. 17). The ALJ also took into account diagnostic tests, examination findings, symptom reports, and daily activities. (Tr. 17-18).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520– to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

11

## DISCUSSION

Plaintiff contends the ALJ erred by not affording Dr. Gutierrez's opinion controlling weight or providing good reasons for discounting it. (Doc. 11, at 7). Plaintiff also argues the ALJ improperly assessed his complaints of pain. (Doc. 11, at 8-10).

*Treating Physician Rule*

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.1527(c)(2). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability – the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

Here, the ALJ afforded "less weight" to Dr. Gutierrez's assessment of Plaintiff's physical limitations because it was not supported by objective evidence and appeared to be based on subjective complaints. (Tr. 15).

Simply stated, Dr. Gutierrez was not entitled to controlling weight for the reasons provided by the ALJ. First, the opinion of a treating physician is only entitled to controlling weight if it is well-supported by the objective medical evidence. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009). Notably, Plaintiff fails to point to any objective medical evidence which supports Dr. Gutierrez's restrictive opinion. To the contrary, the ALJ summarized evidence which conflicted with, and thus did not support Dr. Gutierrez's opinion.

13

For instance, the ALJ discussed Plaintiff's exaggerated pain tolerances for walking and sitting during Ms. Caldwell's physical examination. (Tr. 15 *referring to* Tr. 352). Indeed, physical examinations, including those by Dr. Gutierrez, revealed Plaintiff had a normal gait, normal range of motion in his back, and no neurological deficits. (Tr. 17, 341, 563-66, 614-15). X-rays of Plaintiff's lumbar spine in October 2009 were within normal limits, and an MRI showed no evidence of significant disc herniation, stenosis, or nerve impingement. (Tr. 17, 277, 615). In December 2009, nerve conduction studies of Plaintiff's right leg were normal. (Tr. 17, 497).

These medical findings, discussed by the ALJ, did not support Dr. Gutierrez's opinion that Plaintiff suffered from disabling back pain. Importantly, the ALJ provided good reasons by describing inconsistent objective evidence showing her opinion was unsupported by the record. (Tr. 15-17). These reasons were sufficiently specific and touched upon several of the factors an ALJ is required to consider; namely, supportability and consistency. *See Allen*, 561 F. 3d at 651 (An ALJ's reasoning may be brief so long as he touches upon the factors an ALJ is required to consider).

Moreover, evidence throughout the record supports the proposition that Plaintiff's impairments were not work-preclusive. For example, Dr. Yonan found Plaintiff could return to work if he was cautious and used a back brace. (Tr. 299). Ms. Caldwell found he could perform light-to-medium work, and Dr. Junglas found he could perform a limited range of light work. (Tr. 50, 352). These opinions supported the ALJ's conclusion that Plaintiff could perform at least a limited range of light work.

In addition, Plaintiff acknowledged he could have continued working if his employer had not switched him from his quality control position to a job that required physical work. (Tr. 35).

14

He also reported activities in his daily life that were consistent with the ability to perform light work such as cooking meals, gardening, washing dishes, folding laundry, walking his dog, watching television, driving a car, socializing on the internet, visiting friends, and grocery shopping with his wife. (Tr. 37-40, 530).

Moreover, the ALJ reasonably assumed that Dr. Gutierrez's opinion was based on subjective complaints of pain. For instance, when asked to support her opinion with medical findings, Dr. Gutierrez listed Plaintiff's complaints of pain with various activities rather than objective examination findings. (Tr. 619-20). Specifically, she noted Plaintiff had to lie down to relieve back pressure; his legs gave out occasionally; his back pain flared with vibration and cold; and his carpal tunnel flared with prolonged grip. (Tr. 619-20). Notably absent, however, are objective examinations or findings to support these subjective complaints. *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the Plaintiff's assertions is not credible, objective evidence and is not entitled to protections of the good reasons rule."). Notably, Dr. Gutierrez's own treatment notes do not reflect such severe functional limitations. While Dr. Gutierrez noted tenderness on occasion, she generally reported Plaintiff had a normal gait, full muscle strength, and normal range of motion in his back. (Tr. 564-66, 593, 614-15). Moreover, based on Dr. Gutierrez's referral, Dr. Bell found Plaintiff was not a surgical candidate and noted his back pain was treated with conservative measures. (Tr. 613).

Accordingly, Dr. Gutierrez's opinion that Plaintiff had disabling back pain was inconsistent with and unsupported by the evidence. Moreover, it was based on Plaintiff's subjective complaints of pain rather than objective medical findings. The ALJ provided

sufficiently specific, good reasons for discounting Dr. Gutierrez's opinion, and his decision is supported by substantial evidence.

*Pain and Credibility*

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding his pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of an underlying medical condition; and 2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

A plaintiff's failure to meet the above-stated standard does not necessarily end the inquiry. Rather, "in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability." *Swain v. Comm. of Soc. Sec.*, 297 F. Supp. 2d 986, 989 (N.D. Ohio 2003) (citing SSR 96-7p).

The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication to relieve pain; and 6) any measures used to

16

relieve pain. 20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. An ALJ is not required, however, to discuss each factor in every case. *See Bowman v. Chater*, 1997 WL 764419, at *4 (6th Cir. 1997); *Caley v. Astrue*, 2012 WL 1970250, at *13 (N.D. Ohio 2012).

Further, an "ALJ is not required to accept a claimant's subjective complaints" and may "consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476. An ALJ's credibility determinations about the claimant are to be accorded "great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting Walters, 127 F.3d at 531*); see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("we accord great deference to [the ALJ's] credibility determination.").

Plaintiff argues the ALJ's credibility assessment is flawed because he only considered objective medical evidence when determining Plaintiff was not disabled. However, Plaintiff undermines his own argument when he further argues the ALJ gave undue weight to Plaintiff's daily activities. (Doc. 11, at 8-9). Having reviewed the record, the undersigned finds the ALJ's pain and credibility determination supported by substantial evidence.

Here, in formulating his RFC determination, the ALJ acknowledged he must consider pain pursuant to 20 C.F.R. § 404.1529 and SSR's 96-7p and 96-4p. (Tr. 16). Although the ALJ determined Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, he found Plaintiff's "statements concerning the intensity, persistence and limiting effect of [his] symptoms [] not credible to the extent they were inconsistent with the . . . [RFC] assessment."

(Tr. 17). Specifically, the ALJ noted there was "minimal objective evidence" to support greater restriction than found in the RFC. (Tr. 17).

The ALJ summarized Plaintiff's complaints but noted contrary findings such as a normal gait and x-rays, MRIs, and neurological exams within normal limits. (Tr. 17 *referring to* Tr. 277, 287, 564-66, 614-15). He also noted conservative treatment measures, successful knee surgery, and a stable mental condition. (Tr. 18). Moreover, the ALJ found Plaintiff's daily activities inconsistent with the level of pain and persistence alleged. (Tr. 18). Contrary to Plaintiff's assertion, the ALJ did not give "undue weight to Plaintiff's activities of daily living." (Doc. 11, at 9). Rather, the ALJ considered Plaintiff's activities in conjunction with the objective medical and opinion evidence. (Tr. 16-18); *see* 20 C.F.R. § 404.1529(c)(i) (listing "daily activities" as a factor that should be considered by an ALJ in evaluating a claimant's subjective complaints.).

Indeed, Plaintiff's daily activities supported he was capable of performing a limited range of light work. For instance, he cooked meals, went grocery shopping, gardened, drove, folded clothes, and walked his dog. (Tr. 35-40, 565). Even Plaintiff testified he would have been able to continue working if his employer had not transferred him to a physically demanding job. (Tr. 35-40).

Further undermining Plaintiff's claim of disabling back pain, Ms. Caldwell noted he exaggerated his complaints of pain during his physical assessment. Specifically, Plaintiff's self-reported pain rating of ten out of ten was inconsistent with his ability to walk out of the waiting area and talk normally without physical signs of pain; and his claimed tolerance for sitting was less than his observed tolerance. (Tr. 15, 352). Based on the objective results of Plaintiff's functional capacity evaluation, Ms. Caldwell opined Plaintiff had the ability to perform light-to-

medium level work. (Tr. 352). Likewise, Dr. Junglas found Plaintiff could perform a limited range of light work. (Tr. 14-15, 50-51).

Finally, as Defendant points out, the ALJ did not completely dismiss Plaintiff's complaints of pain; rather, he credited them to the extent they were consistent with the evidence as a whole. The ALJ accounted for Plaintiff's complaints of pain when lifting heavy objects, performing postural activities, and sitting for extended periods of time by limiting him to light work that required no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no commercial driving; no exposure to hazardous machinery or heights; and only simple, routine tasks with high production quotas or strict time requirements. (Tr. 14).

In conjunction with the objective medical and opinion evidence, Plaintiff's daily activities supported the ALJ's finding that Plaintiff was less limited than he claimed to be, and his decision is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

 s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).